GULF, C. & S. F. RY. CO. v. COOPER.
(No. 546.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1920. Rehearing Denied March 3, 1920.)

1. RAILROADS ⬥411(5)—OWNER OF ANIMAL KILLED ON TRACKS NOT REQUIRED TO BE FENCED MUST SHOW NEGLIGENCE.

Where an animal is killed at a point on the track not required to be fenced, negligence on the part of the railroad, proximately causing the injury, must be shown to justify recovery.

2. RAILROADS ⬥443(7)—EVIDENCE HELD INSUFFICIENT TO SHOW NEGLIGENCE PROXIMATELY CAUSING KILLING OF COW.

In an action for killing a cow at a point where railroad company was not required to fence its tracks, evidence held insufficient to show that trainmen were negligent in failing to give signals and keep proper lookout and that such negligence was the proximate cause of the injury.

Appeal from Sabine County Court; F. P. Adams, Judge.

Action by J. E. Cooper against the Gulf, Colorado & Santa Fé Railway Company, begun in justice court and appealed to county court. From a judgment there for plaintiff, defendant again appeals. Reversed and remanded.

Hamilton & Hamilton, of Hemphill, and Terry, Cavin & Mills and O. B. Wigley, all of Galveston, for appellant.

Minton & Lewis, of Hemphill, for appellee.

WALKER, J. This suit originated in one of the justice courts of Sabine county, and was for damages in the sum of $100 for the value of one cow alleged to have been killed at McElroy's Switch in said county by appellant's freight train, and for $20 attorney's fee. The trial in the justice court resulted in judgment against appellant for $100 as the value of the cow, and $20 attorney's fee. An appeal was taken to the county court, and upon trial, judgment was again rendered against appellant for $100, as the value of the cow, and $20 attorney's fee. From this judgment an appeal has been duly perfected to this court.

Appellant advances the proposition that the testimony in this record is not sufficient to sustain a finding of negligence in killing the cow. Plaintiff testified in his own behalf that he did not see the cow killed, but stated that her market value was $100.

"I filed a stock claim for $100 in writing more than 30 days prior to the filing of this suit, employed the law firm of Minton & Lewis to bring the suit, and agreed to pay them a fee of $20, which was a reasonable fee. * * * There is a heavy grade to the south of McElroy's Switch, and a curve to the east. I have seen freight trains stall on this grade a good many times. There is also an open field on the east side of the track at this point for about 600 yards."

C. N. McClelland testified as follows:

"I live about sixty yards west of the railroad track at McElroy's Switch and on the south side of the road leading west from the switch. I saw the Santa Fé train strike J. E. Cooper's cow. * * * I was sitting in my house by the fire, and saw the cow come out of the woods in front of my house, stop, and drink water out of a hole, and walk directly upon the railroad track. I heard the freight train coming while the cow was drinking water out of the water hole. * * * The train whistled right opposite my house, but I am not sure the bell was rung. The cow stepped across the track in front of the train, stopped, then made a lunge or attempted to jump, but the train struck her before she cleared the track on the east side. * * * The train went on and did not appear to slow up. * * * It was not a long train. * * * I have lived where I now live for three or four years, and freight trains pass every day. * * * If the train tried to stop I couldn't tell it, but from the noise it made I don't think it tried to stop. * * * This cow was struck about 30 feet north from the public road crossing and on station grounds. There is a slight curve to the east, beginning about 100 or 150 yards from where the cow was struck. There is a field on the east side of the track

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for half a mile or more before McElroy's Switch."

As to the circumstances under which this cow was killed C. F. Ernest, the engineer, testified:

"I was engineer on freight train No. 252. * * * I struck a cow at McElroy's Switch. * * * The cow came up on the track directly in front of my train and stopped. I did not see the cow until I was about 50 feet from her. I sounded the whistle, and the bell was ringing. I applied the air brake and made every possible effort to stop the train; but I was so close to the cow when I saw her that I could not stop, but I did check the speed of the train to half. When I struck the cow, I went on and did not stop. * * * The cow was on the south end of the station grounds, where the switch comes into the main line, and only about 15 or 20 feet from the road crossing. There is a slight curve leading to the south of McElroy's Switch; begins to curve about 20 or 30 steps north of the switch. It is upgrade going north; but it is not a heavy grade at all. * * * The day I struck the cow in question, I had a light train, some 15 or 20 cars, and did not have to stop at McElroy's Switch. * * * The accident was unavoidable from my viewpoint, and I sounded the stock alarm whistle when I saw the cow, and the bell was ringing for the road crossing and station grounds. I blew the road crossing whistle, and also for the station, before seeing the cow, and sounded the stock alarm whistle when I saw the cow come on the track, and made an effort to stop my train, but was too close to stop before striking the cow."

J. W. Moffett, the fireman, testified that he did not remember striking the cow at McElroy's Switch.

The plaintiff filed a claim with the defendant company, in which he said:

"Claimant says the cow was struck on station grounds; gives name of witnesses who saw the cow last; stock running at large; no stock law; bell rung and whistle.".

[1, 2] This is all the testimony in the record on defendant's negligence. This testimony fails to show how far the water hole was from the railroad track, in what manner the cow walked towards the track—that is, whether fast or slow—when the whistle was first blown, and when the bell was first rung. Though the defendant may have been guilty of negligence in failing properly to ring the bell and blow the whistle, and in failing to keep a proper lookout for stock while the train approached the station, as the cow was killed in station grounds, where defendant was not required to fence against stock, it must further appear that such negligence was the proximate cause of the injury. In Railway Co. v. Leuschner, 166 S. W. 416, it is said:

"Where an animal is killed at a point where the railroad company is not required to fence its track, it then devolves upon the owner to show negligence on the part of the company before he will be entitled to recover, and that such negligence was the proximate cause of the injury."

See Railway Co. v. Bandy, 163 S. W. 341; Railway Co. v. Graham, 155 S. W. 653; Railway Co. v. Bennett, 59 Tex. Civ. App. 321, 126 S. W. 607; Railway Co. v. Matthews, 158 S. W. 1048; Railway Co. v. Bandy, 186 S. W. 781.

It seems to us that, if it be conceded that negligence was shown against the railroad company, it does not appear that such negligence was the proximate cause of the injury to the cow. On another trial the court should sustain the motion of the railroad company to substitute the Director General of Railroads as defendant, in lieu of the railroad company.

For the error discussed, this cause is reversed and remanded.